**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dixie Baker,<br><br>      Plaintiff,<br><br>vs.<br><br>D.A.R.A. II, Inc., an Arizona Corporation,<br>Kenneth Presutti, a single man; Cyndee<br>Presutti, a single woman; Jesse and Dara<br>Wintersteen, husband and wife; and<br>Jeffery Presutti, a single man,<br><br>      Defendants | No. CV-06-2887-PHX-LOA<br><br>**ORDER** |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and on Defendants' Cross Motion for Summary Judgment. (dockets # 25, # 31) After considering all the pleadings submitted on these motions and the relevant case law, the Court concludes that because genuine issues of material fact exist for jury determination, neither party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

**I. Background**

Plaintiff alleges that Defendants DARA II, Inc., Kenneth Presutti, Cyndee Presutti, Dara Wintersteen and Jeffery Presutti (collectively referred to as "Defendants") failed to pay her overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("the FLSA" or "the Act") and the Arizona Wage Act, A.R.S. § 23-351, 23-352, 23-353 and 23-355. (docket # 1) Defendants deny any wrongdoing.

On November 30, 2006, the date on which she filed this action, Plaintiff was a 65-year-old widow.  (SOF 1[1])  DARA II, Inc. is an Arizona corporation that operates a network of group homes for disadvantaged children.  Defendants Kenneth Presutti, Cyndee Presutti, Dara Winterteen, and Jeffrey Presutti were owners, directors, and officers of DARA II, Inc. during the relevant period.  (SOF 6, 10; Plaintiff's Exh. D[2])  Dara Wintersteen and Jeffrey Presutti are the children of Kenneth and Cyndee Presutti. (SOF 6, 10)   Before owning and operating DARA II, Inc., Defendants operated DARA, Inc.  (SOF 18; Plaintiff's Exh. C, Cyndee Presutti depo. 22)

Plaintiff worked for DARA, Inc. and continued her employment with DARA II for a combined total of over 15 years.  (docket # 26 at 2, docket # 35 at 1) Plaintiff's employment duties included cooking, cleaning, doing laundry, preparing children for school and bed, administering medication, and engaging in general child care. (SOF 3; docket # 35 at 2) The parties agree that Plaintiff's position was not exempt from the overtime requirements of the FLSA.  (docket # 26 at 2, docket # 35 at 2; SOF 4)

Plaintiff claims that she consistently worked over 40 hours a week.  (SOF 29, Baker Decl. ¶ 4) Indeed, Defendants admit that "there were periods of time that" Plaintiff worked over forty hours a week.  (docket # 35 at 5)  Plaintiff's weekly time sheets from January 25, 2005 through August 25, 2005, show that during this period, Plaintiff worked a total of 452.5 overtime hours.  (SOF 30, Plaintiff's Exh. B)  Plaintiff's time sheets also show that from January 1, 2006 through October 25, 2006, she worked 1079 overtime hours.  (SOF 38, Plaintiff's Exh. G)  Defendants do not dispute the number of overtime hours that Plaintiff worked in 2005 and 2006.  (docket # 35 at 6) Defendants, however, argue that Plaintiff was paid for all of the overtime she worked.  Plaintiff further argues that between January 25, 2005 and August 25, 2005, she was paid a fixed salary of $1700 twice a month regardless

---

[1]  "SOF" refers to Plaintiff's Statement of Facts, docket # 26.

[2]  Citations to Plaintiff's Exhibits are to exhibits attached to Plaintiff's Motion for Partial Summary Judgment, docket # 25.

of the number of hours she worked. (SOF 27, 28, Plaintiff's Exhs. B, F)  Plaintiff claims that she was willing to work so many hours because she mistakenly believed that to collect social security benefits, she had to be actively employed when she turned 65 years old and was concerned that she might lose her job if she did not work the hours requested.  (Baker Decl. ¶ 6[3])

Defendants dispute that they owe Plaintiff unpaid wages for overtime worked.[4] Defendants assert that Plaintiff's job performance began to decline when she "got up in age." (CSOF 2[5])  Defendants also assert that Mr. Presutti, the officer in charge of hiring, firing and negotiating salaries, discussed Plaintiff's job performance with her. (CSOF 3, 4)  Plaintiff's performance eventually declined to the point that Ms. Presutti felt she could no longer be an in-house caregiver on a daily basis. (CSOF 7)  Defendants claim they kept Plaintiff as an "on call" employee and used her services to "fill in" for absent employees. (CSOF 7, 8) Defendants further claim that although Plaintiff was no longer working full-time, they continued to pay her as if she had completed the same number of shifts she had previously worked. (CSOF 9) Defendants contend that DARA II kept Plaintiff in this "on call" position in 2004 and for nearly all of 2005.  They further argue that during this period, Plaintiff was paid more than $19,0000.00 for hours she did not work.  (CSOF 10)  They explain that Plaintiff was paid a "salary" that included normal hours at a rate of $6 per hour, and overtime at a rate of $9 per hour, and the full "shift pay" even when she did not work.  (CSOF 11; docket # 35 at 4; Defendants' Exh. B, Cyndee Presutti depo. 59-61) In his affidavit, Kenneth Presutti avers that he personally met with Plaintiff and explained this "shift pay" schedule to her and that she signed a "Pay Scale and Job Description Acknowledgment"

---

[3] "Baker Decl." refers to the Declaration of Dixie Baker in Support of Motion for Partial Summary Judgment, docket # 27)

[4] In their Answer, Defendants' assert the affirmative defense of "lack of damages." (docket # 6)

[5] "CSOF" refers to Defendants' Controverting Statement of Facts, docket # 35.

1   memorializing her understanding of this pay schedule.  (docket # 35 at 4, Defendants' Exh.

2   C, Kenneth Presutti Aff. ¶ 9-13)  Defendants further argue that this "shift pay" schedule,

3   pursuant to which they paid Plaintiff, was developed in conjunction with the United States

4   Department of Labor's 1998 investigation of DARA, Inc.  (docket # 31 at 9)  Specifically,

5   in 1998, the Department of Labor investigated DARA, Inc. regarding its failure to pay

6   overtime in accordance with the FLSA.  (Defendants' Exh. D) At the conclusion of the

7   investigation, the Department of Labor advised DARA, Inc., that it had not been properly

8   paying overtime and ordered DARA, Inc. to make back-payments for overtime due several

9   employees.  (Defendants' Exh. D) Defendants claim that the Department of Labor worked

10  with DARA, Inc. and advised it regarding how to properly pay its employees in the future.

11  (docket # 31 at 9; Defendants' Exh. D) Defendants claim that on the advice of a Department

12  of Labor investigator, DARA, Inc. initiated "shift pay" to ensure employees were paid a base

13  pay for the first eight hours of a shift and then paid at time-and-a-half for every hour over

14  eight hours in a given day.  (docket # 31 at 9) As previously stated, Defendants contend that

15  Plaintiff was paid in accordance with the "shift pay" schedule approved by the Department

16  of Labor at a regular rate of $6 per hour and an overtime rate of $9 per hour.  (CSOF 11;

17  docket # 35 at 4; Defendants' Exh. B, Cyndee Presutti depo. 59-61)

18          In 2005, the Presuttis divorced and Cyndee Presutti "took over" the business,

19  including daily operations and payroll. (CSOF 12)  DARA II also began "downsizing" and

20  Ms. Presutti claims she could no longer afford to pay Plaintiff for hours she did not work.

21  (*Id.*) Ms. Presutti agreed to keep Plaintiff "on call" but advised her "verbally" that she could

22  only pay her for actual hours worked.  (*Id.*; Plaintiff's Exh. C, Cyndee Presutti depo. 100)

23  Defendants claim that Plaintiff agreed to this arrangement. (CSOF 13; Plaintiff's Exh. C,

24  Cyndee Presutti depo. 100-101) DARA II subsequently downsized from seven groups homes

25  to two which led to the lay off of several employees. (CSOF 14)  There is no dispute that

26  Plaintiff was laid off on October 25, 2006 due to Defendants' downsizing.  (*Id.*; SOF 2;

27  Plaintiff's Exh. C, Cyndee Presutti depo. 108, 109; CSOF 15)

28

1    After her employment with Defendants ended, Plaintiff took her payroll records

2 to an accountant for tax preparation services.  (Baker Decl., ¶ 8) Upon the tax preparer's

3 advice, Plaintiff consulted counsel to determine whether she was owed overtime wages.

4 (docket # 25 at 3; Baker Decl. ¶ 8) Counsel subsequently filed this action on Plaintiff's

5 behalf seeking to recover allegedly unpaid overtime wages under two legal theories: (1)

6 violation of the FLSA for failure to pay overtime; and (2) violation of the Arizona Wage Act

7 for failure to pay overtime.  (dockets # 1, 25 at 3)

8    Thereafter, Plaintiff filed the pending motion for Partial Summary Judgment

9 seeking summary judgment on only a portion of Count I of the Complaint.  Count I of the

10 Complaint seeks unpaid overtime wages for November 30, 2003 through November 30,

11 2006.[6] (docket # 1)  However, the Motion for Partial Summary Judgment only seeks unpaid

12 overtime wages for the period from November 30, 2003 to August 25, 2005.  Plaintiff

13 explains that on or about August 26, 2005, Defendants modified the structure of her

14 compensation and that thereafter, her pay varied for each pay period.  (Plaintiff's Exh. B)

15 Plaintiff argues that Defendants owe overtime for this period, but that as of the date on which

16 she filed the motion for partial summary judgment, more discovery was needed to determine

17 damages for August 26, 2005 to November 30, 2006.  (docket # 25 at 6-7) Defendants

18 oppose the motion for summary judgment and have filed a cross-motion for summary

19 judgment.  (docket # 31)

20 **II.  Law on Summary Judgment**

21    A court must grant summary judgment if the pleadings and supporting documents,

22 viewed in the light most favorable to the nonmoving party, "show that there is no genuine

23 issue as to any material fact and that the moving party is entitled to judgment as a matter of

24 law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger*

25 *v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).   Substantive law

26

27    [6] Plaintiff seeks damages for the period November 30, 2003 to November 30, 2006,
   however, the parties agree Plaintiff's employment with Defendants ended on October 25,
28 2006. (SOF 2, CSOF 14)

1  determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

2  (1986); *Jesinger*, 24 F.3d. at 1130.  In addition, "[o]nly disputes over facts that might affect

3  the outcome of the suit under the governing law will properly preclude the entry of summary

4  judgment." *Anderson*, 477 U.S. at 248.  The dispute must be genuine, that is, "the evidence

5  is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

6        A principal purpose of summary judgment is "to isolate and dispose of factually

7  unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate against

8  a party who "fails to make a showing sufficient to establish the existence of an element

9  essential to that party's case, and on which that party will bear the burden of proof at trial."

10  *Id.* at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  The moving

11  party need not disprove matters on which the opponent has the burden of proof at trial.

12  *Celotex*, 477 U.S. at 323.

13        The party opposing summary judgment "may not rest upon the mere allegations

14  or denials of [the party's] pleadings, but. . . must set forth specific facts showing that there

15  is a genuine issue for trial." Fed.R.Civ.P. 56(e);  *Matsushita Elec. Indus. Co., Ltd. v. Zenith

16  Radio Corp.*, 475 U.S. 574, 586-87 (1986).  *Brinson v. Lind Rose Joint Venture*, 53 F.3d

17  1044, 1049 (9th Cir. 1995).  There is no issue for trial unless there is sufficient evidence

18  favoring the nonmoving party.  If the evidence is merely colorable or is not significantly

19  probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.  However,

20  "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be

21  drawn in his [or her] favor."  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

22  158-59 (1970)).

23        Whatever facts which may establish a genuine issue of fact must *both* be in the

24  district court's file and set forth in the response. *Carmen v. San Francisco Unified School

25  District*, 237 F.3d 1026, 1029 (9th Cir. 2001).  The trial court

26   may determine whether there is a genuine issue of fact, on summary judgment, based
     on the papers submitted on the motion and such other papers as may be on file and
27   specifically referred to and facts therein set forth in the motion papers.  Though the
     court has discretion in appropriate circumstances to consider other materials, it need
28   not do so.  The district court need not examine the entire file for evidence establishing

a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

*Id.* at 1031.

Mindful of the controlling legal standard, the Court will consider Plaintiff's Motion for Partial Summary Judgment which seeks summary judgment on Plaintiff's FLSA claim for unpaid overtime wages damages for the period from November 30, 2003 to August 25, 2005.

**III.  Relevant Time Period / Applicable Limitations Period**

Plaintiff filed this action on November 30, 2006 (docket # 1) and seeks to recover unpaid overtime wages and liquidated damages dating back to November 30, 2003 pursuant to an extension of the FLSA's normal two-year limitations period.  29 U.S.C. § 255(a).  Defendants contend that the FLSA's usual two-year limitations period applies and that Plaintiff may only seek damages, if any, dating back to November 30, 2004.  (docket # 31 at 8)

Violations of the FLSA are ordinarily subject to a two-year statute of limitations.  If an employer willfully violates the FLSA, 29 U.S.C. § 255(a) permits extension of the two-year statute of limitations to a three-year period.  29 U.S.C. § 255(a). The party claiming an exception to the normal period bears the burden of showing the violation was willful.  29 U.S.C. § 255(a).  The determination of willfulness is a mixed question of law and fact.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003)(citation omitted.)  Mere negligence by the employer in determining its legal obligation is not sufficient.  Rather, a violation is willful if the employer either: (1) affirmatively knew its conduct violated the FLSA; or (2) recklessly disregarded whether its conduct violated the FLSA.  *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 918 (9th Cir. 2003)(citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "For § 255's extension to obtain, an employer need not knowingly have violated the FLSA; rather the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute., *Herman v. RSR Sec. Servs.*, Ltd., 172 F.3d 132, 141 (2nd Cir. 1999), although

1  [the court] will not presume that conduct was willful in the absence of evidence."
2  *Alvarez*, 339 F.3d at 908 (finding evidence sufficient to support a finding that employer
3  recklessly disregarded the possibility that it was violating the FLSA because employer
4  was on notice of FLSA's requirements but took no action to assure compliance with
5  them.)

6       The parties dispute the relevant time period for which Plaintiff may seek
7  recovery of allegedly unpaid overtime wages.  Plaintiff contends that the three-year
8  limitations period applies because Defendants' failure to pay her overtime was wilful.
9  Plaintiff argues that Defendants' former violation of the FLSA constitutes evidence of
10 wilfulness.  As previously mentioned, in 1998, the Department of Labor investigated
11 DARA, Inc., DARA II's predecessor, for failure to pay overtime and ordered DARA, Inc.
12 to pay unpaid overtime to several employees.  (SOF 19-21, Plaintiff's Exh. E)  Plaintiff
13 correctly asserts that the Ninth Circuit has found that employers who have "previously
14 had run-ins with the Labor Department," even for a different type of violation, are
15 "certainly . . . on notice of . . . potential FLSA requirements."  *Chao*, 346 F.3d at 919.   In
16 *Chao*, the Ninth Circuit found the employer's prior FLSA violations, especially when
17 combined with undisputed testimony of its employees, proved, at least, reckless disregard
18 for the FLSA's requirements.  *Chao*, 346 F.3d at 919.  Similarly, in *Hodgson v. Cactus*
19 *Craft of Arizona*, 481 F.2d 464, 467 (9th Cir. 1973), the Ninth Circuit affirmed the district
20 court's finding that the employer's FLSA violations were wilful in view of two previous
21 investigations of the employers's labor practices and a third investigation that led the
22 current litigation.  *Id.* at 467.

23       In view of the past investigation of Defendants by the Department of Labor,
24 Plaintiff argues they cannot claim to have been unaware of the FLSA or their obligation
25 to pay overtime.  As further evidence of Defendants' wilfulness, Plaintiff cites portions of
26 Cyndee Presutti's deposition.  During her deposition, Cyndee Presutti denied that a
27 Department of Labor investigation had occurred.  (Plaintiff's Exh. C, Cyndee Presutti
28 depo., 35, 81)  She further testified that no employee had ever made any complaints

1    against her or any of her companies for unpaid overtime wages.  (*Id.*)  Plaintiff contends

2    that Cyndee Presutti's deposition testimony is contradicted by the Department of Labor's

3    narrative report which references a stipulation signed by Ms. Presutti concerning

4    complaints for unpaid overtime, the Department of Labor's subsequent investigation, and

5    Ms. Presutti's agreement to pay employees unpaid overtime wages.  (SOF 23-24;

6    Department of Labor Narrative Report, Nov. 24, 1998 at 2, Plaintiff's Exh. E)  Plaintiff

7    further notes that each of the Defendants tried to conceal the existence of the Department

8    of Labor investigation.  Plaintiff correctly asserts that each of the Defendants denied the

9    existence of any governmental investigation related to the failure to pay overtime in

10    response to Plaintiff's First Set of Non-Uniform Interrogatories.  (SOF 25; Answer to

11    Plaintiff's First Set of Non-Uniform Interrogatories, Exh. H)  Indeed, Defendants do not

12    dispute that they denied the existence of the Department of Labor Investigation.  (docket

13    # 35 at 4; SOF 25; Plaintiff's Exh. H).

14        Defendants argue that the three-year limitations period does not apply.  First,

15    Defendants argue that during her deposition, Plaintiff testified that she sought overtime

16    wages for "2004, 2005, and 2006." (CSOF 19)  Defendants argue that the Court should

17    disregard Plaintiff's recent attempt to expand the period for which she seeks recovery.

18    (docket # 31 at 8)  The Court rejects the argument that Plaintiff's deposition testimony

19    limits the period for which she may seek recovery.  Plaintiff's Complaint seeks overtime

20    compensation "[f]or at least three (3) years prior to the filing of the Action. . . ."  (docket

21    # 1 at 2) Thus, although Plaintiff did not mention 2003 during her deposition, her

22    Complaint clearly seeks recovery of overtime wages dating back to November of 2003.

23        Defendants further argue that Plaintiff has denied that their conduct was

24    willful.  (docket #  31 at 8)  In support of this argument, Defendants again refer to

25    Plaintiff's deposition testimony wherein Plaintiff admitted that Defendants did not act

26    willfully or "on purpose"  or "willful." (CSOF 19; Defendants' Exh. A, Baker depo. 37-

27    40)  The Court finds this argument unpersuasive.  Plaintiff, a lay person, was likely

28    unaware of the legal definition of the term "willful" as used in the FLSA and her

     deposition testimony should not be construed as a legal opinion which she was not

1   qualified to give.  Federal Rule of Evidence 702.  While Plaintiff's deposition statements

2   may be admissions at time of trial, they are not binding for purposes of Defendants'

3   cross-motion for summary judgment.

4           Moreover, Defendants do not specifically dispute that they recklessly

5   disregarded their obligation to comply with the FLSA.  In view of their past investigation

6   by the FLSA on the same issue raised in Plaintiff's Complaint, Defendants were certainly

7   aware of the FLSA's requirements regarding overtime.  *Chao*, 346 F.3d at 919. In view of

8   Defendants' past "run in" with the Department of Labor, Plaintiff has established a *prima*

9   *facie* case that Defendants acted, at least, with reckless disregard for the FLSA's

10  requirements which is sufficient to establish a wilful violation of the FLSA and trigger the

11  three-year limitations period.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133

12  (1988); *Chao*, 346 F.3d at 919.

13  **IV.  Analysis**

14          The Fair Labor Standards Act ("the FLSA" or "the Act"), 29 U.S.C. § 201 *et seq*.,

15  regulates the wage, hour, and working conditions of American employees.  The Act requires,

16  *inter alia*, that employers must pay employees overtime wages of 1 ½ times their regular rate

17  of pay for each hour worked in excess of 40 hours during a week.  29 U.S.C. § 207(a)(1).[7]

18          An employee bringing an action for unpaid overtime compensation and liquidated

19  damages has the burden of proving that she performed work for which she was not properly

20  compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946),

21  *superseded on other grounds by statute as noted in*, *Carter v. Panama Canal Co.*, 463 F.2d

22  1289 (D.C.Cir. 1972).  To establish that she is entitled to partial summary judgment on her

23  FLSA claim for unpaid overtime wages, Plaintiff bears the burden of proving that: (1)

24

25

26          [7] 29 U.S.C. § 207(a)(1) provides that: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise

27  engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess

28  of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

1    Defendants were employers under the FLSA; (2) Plaintiff was an employee under the FLSA;

2    (3) Plaintiff worked overtime; and (4) Plaintiff was not paid overtime for overtime hours

3    worked.

4          Before considering whether Plaintiff has met her burden, the Court will briefly

5    address Defendants' argument that Plaintiff's claims for overtime are improper because she

6    did not make a claim with her employer for unpaid wages before filing this lawsuit. (docket

7    # 31 at 4, 14, 15) This assertion is of no moment because the FLSA does not require

8    employees to make a demand for payment from their employer before bringing suit.

9    *Barrentine v. Arkansas-Best Freight Systems*, 450 U.S. 728, 745 (1981).

10              **A.  Whether Defendants were Employers under the FLSA**

11          The FLSA defines an employer as "any person acting directly or indirectly in the

12    interest of an employer in relation to an employee. . . ."  29 U.S.C. § 203(d) The term

13    "person" is broadly defined to include an "individual, partnership, association, corporation,

14    business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

15    Thus, any individual who acts directly or indirectly in the interest of the employer is subject

16    to individual liability under the FLSA.  *Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281, 284

17    (E.D.N.Y. 2002)(finding President of marketing company was an "employer" under the

18    FLSA because he had the power to hire, fire, supervise employees, set work schedule and

19    determine rate of pay for employees); *Johnson v. A.P. Products, Ltd.*, 934 F.Supp. 625

20    (S.D.N.Y. 1996)(holding that corporate officers with operational control over employing

21    entity fall within the definition of "employer" under the FLSA.)

22          There is no dispute that DARA II, Inc. was the corporate entity which employed

23    Plaintiff and that DARA II is an employer under the FLSA.  (docket # 35 at 2, 3)  Similarly,

24    there is no dispute that Kenneth and Cyndee Presutti were employers under the FLSA.

25    (docket # 35 at 3)  Defendants do not dispute that Dara Wintersteen and Jeffrey Presutti were

26    corporate officers of DARA II.  (docket # 35 at 3)  Although Defendants dispute Plaintiff's

27    statement that Dara Wintersteen "exercised supervisory authority" over Plaintiff's

28    employment (docket # 35 at 3), they do not argue that Dara Wintersteen was not an employer

for purposes of the FLSA.  In view of Dara Wintersteen's position as a corporate officer in

1   DARA II, Plaintiff has created a *prima facie* case that Dara Wintersteen was an employer for

2   FLSA purposes.  *Johnson*, 934 F.Supp. 625.  The Court finds that Plaintiff has created a

3   *prima facie* case that Defendants were employers under the FLSA.

4   **B.  Whether Plaintiff was an Employee**

5   Although the FLSA exempts certain workers from its overtime requirements, the

6   Department of Labor previously found that the FLSA applies to caregivers in group homes

7   operated by Defendants.  (Plaintiff's Exh. E)  In their response, Defendants characterize

8   Plaintiff as an "on-call" employee, rather than a full-time employee.  (docket # 31 at 9)

9   Defendants, however, do not dispute that she was an employee. Significantly, Defendants

10  concede that Plaintiff was an employee of DARA II, Inc. and that her position was not

11  exempt from the FLSA's overtime requirements.  (docket # 31 at 2)

12  **C.  Whether Plaintiff Worked Overtime for Defendants**

13  Plaintiff asserts that she consistently worked more than 40 hours a week for

14  Defendants.  Defendants admit that "there were periods of time that Ms. Baker worked more

15  than 40 hours . . . ."  (docket # 35 at 5)

16  Plaintiff submits evidence which shows she worked 536 hours of overtime in

17  2005 and 1079 hours of overtime in 2006. (SOF 30, 37-38, Plaintiff's Exhs. B, G)

18  "Defendants do not dispute the amount of overtime worked in 2005 and 2006 . . . ."  (docket

19  # 35 at 6)  In accordance with the parties' agreement and the record, the Court finds that

20  Plaintiff worked 536 hours of overtime in 2005.  Although the parties agree as to the number

21  of overtime hours Plaintiff worked in 2006, because Plaintiff's pending motion only pertains

22  to the period from November 30, 2003 to August 25, 2005, the Court will not make a

23  determination regarding the overtime hours Plaintiff worked in 2006.

24  Plaintiff further states that she "worked approximately the same amount of hours

25  in 2003 and 2004 as she did in 2005 and 2006."  (docket # 26 at 9)  In support of this

26  assertion, Plaintiff submits her Declaration.  Defendants dispute the assertion regarding the

27  number of hours Plaintiff worked in 2003 and 2004.  (docket # 35 at 5)  Defendants,

28  however, admit they no longer have Plaintiff's time sheets for 2003 and 2004 (docket # 35

at 6) and do not submit any evidence to directly dispute Plaintiff's assertion that she worked the same amount of hours in 2003 and 2004 as she did in 2005 and 2006.

In view of the remedial purpose of the FLSA and the employer's statutory obligation

> to keep proper records of wages, hours and other conditions and practices of employment . . . where an employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, . . . the solution . . .is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records . . .; it would allow the employer to keep the benefits of an employee's labors without paying due compensation contemplated by the FLSA.

*Anderson*, 328 U.S. at 687.  Where an employer has failed to keep adequate records of overtime hours and wages as required by the FLSA, "'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference.'" *Brock v. Seto*, 790 F.2d 1446 (9th Cir. 1986) (quoting *Anderson*, 328 U.S. at 687)).  The burden then shifts to the employer to show the precise number of hours worked or to present sufficient evidence to negate the "reasonableness of the inference to be drawn from the employee's evidence." *Id.*  "If the employer fails to make such a showing, the court 'may then award damages to the employee, *even though the result may be only approximate*.'" *Brock*, 790 F.2d 1446 (emphasis in original)(quoting *Anderson*, 328 U.S. at 688)).

The parties dispute the number of hours Plaintiff worked in 2003 and 2004 and whether she worked overtime hours during those years.  Plaintiff urges the Court to extrapolate the number of hours worked in 2003 and 2004 from her overtime hours worked in 2005 and 2006.  Defendants dispute that Plaintiff worked the same number of hours in 2003 and 2004 as she worked in 2005 and 2006.  The Court finds that there is a material issue of fact regarding the number of overtime hours Plaintiff worked in 2003 and 2004 and, therefore, cannot make a determination as a matter of law regarding overtime worked during those years.

**D.  Rate of Pay/Whether Plaintiff was Paid for Overtime Hours**

As the parties recognize, the central issue in this case is Plaintiff's regular rate of pay.  Plaintiff argues that her regular rate of pay from November 30, 2003 to August 25, 2005 is based on a salary of $1700 twice a month.  If this is the correct rate of pay, Plaintiff was not paid overtime for overtime hours worked.  On the other hand, Defendants argue that Plaintiff's regular rate of pay was $6.00 per hour.  If this is the correct rate of pay, Plaintiff was actually overpaid during the relevant period.  Nevertheless, Defendants make no affirmative claim for reimbursement of overpayments to Plaintiff in this litigation.

The FLSA, with some exceptions, defines regular rate of pay to include all "remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e).  The "regular rate" of pay is the keystone to calculating an employee's overtime rate because the overtime rate is one and one-half times an employee's regular rate of pay.  29 U.S.C. § 207(a); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).  Under the FLSA, an employee's total compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  *Local 246 Utility Workers Union of America v. Southern California Edison, Co.*, 83 F.3d 292 (9th Cir. 1996)(recognizing that "[t]he key point is that the pay or salary is compensation for work, and the regular rate therefore must be calculated by dividing all compensation paid for a particular week by the number of hours worked in that week.")  The regular rate must reflect all of the payments received regularly during the work week, exclusive of overtime payments, "[i]t is not an arbitrary label chosen by the parties, it is an actual fact."  *Walling*, 325 U.S. at 424; *Bay Ridge Operating Company v. Aaron*, 334 U.S. 446, 464 (1948).  An employee's regular rate of pay is computed by reference to the number of hours the salary is intended to compensate up to 40 hours.  *Walling*, 325 U.S. at 424. Beyond 40 hours, the employee is entitled to one and one-half times the regular rate of pay.  29 U.S.C. § 207(a).

Plaintiff asserts that she was paid a salary of $1700 twice a month, or $850 a week.  (SOF 28, Plaintiff's Exh. B) In support of this assertion, Plaintiff relies on payroll registries created by Defendants' third-party payroll vendor, ADP, which show that Plaintiff was paid a $1700 salary twice a month.  (*Id.*)  If Plaintiff's assertion is true, her regular rate

1    of pay is determined by taking $850 (Plaintiff's alleged weekly salary) divided by 40

2    (maximum hours in a work week), which equals $21.25 per hour.   Plaintiff's overtime rate

3    would be $31.87 an hour.

4                    On the other hand, Defendants contend that even though Plaintiff was paid a

5    "salary," her regular rate of pay was $6.00 per hour. (docket # 31 at 2) Defendants explain

6    that while they paid Plaintiff a salary, a large portion of this amount was "overpayments"

7    given to Plaintiff "out of good conscience and because they liked her." (docket # 31 at 10)

8    Defendants assert that Plaintiff's job performance began to decline when she "got up in age,"

9    (CSOF 2[8]), and eventually Ms. Presutti felt she could no longer be an in-house caregiver on

10   a daily basis. (CSOF 7)  Defendants claim that they kept Plaintiff as an "on call" employee

11   and used her services to "fill in" for absent employees. (CSOF 7, 8)  Defendants further

12   claim that although Plaintiff was no longer working full-time, they continued to pay her as

13   if she had completed the same number of shifts she had previously worked. (CSOF 9)  They

14   further argue that during this period, Plaintiff was paid more than $19,0000.00 for hours she

15   did not work.  (CSOF 10)  They explain that Plaintiff was paid regularly on "salary" that

16   included normal hours at a rate of $6 per hour, and overtime at a rate of $9 per hour, and the

17   full "shift pay" even when she did not work.  (CSOF 11; docket # 35 at 4; Defendants' Exh.

18   B, Cyndee Presutti depo. 59-61)  Kenneth Presutti avers that he personally met with Plaintiff

19   and explained this "shift pay" schedule to her and that she signed a "Pay Scale and Job

20   Description Acknowledgment" memorializing her understanding of this pay schedule.

21   (docket # 35 at 4, Defendants' Exh. C, Kenneth Presutti Aff. ¶ 9-13) Defendants further

22   argue that this "shift pay" schedule was developed in conjunction with the United States

23   Department of Labor's 1998 investigation of DARA, Inc. (docket # 31 at 9) Defendants

24   contend that, on the hearsay advice of a Department of Labor investigator, DARA, Inc.

25   initiated "shift pay" to ensure employees were paid a base pay for the first eight hours of a

26   shift and then paid at time-and-a-half for every hour over eight hours in a given day.  (docket

27   # 31 at 9)  As previously stated, Defendants contend that Plaintiff was paid in accordance

28

_____

[8]  "CSOF" refers to Defendants' Controverting Statement of Facts, docket # 35.

1    with the "shift pay" schedule approved by the Department of Labor at a regular rate of $6 per

2    hour and an overtime rate of $9 per hour.  (CSOF 11; docket # 35 at 4; Defendants' Exh. B,

3    Cyndee Presutti depo. 59-61)

4          The record contains conflicting evidence regarding Plaintiff's regular rate of pay.

5    There is evidence both that her regular rate of pay was $1700 twice a month and that her

6    regular rate of pay was $6.00 per hour.  Because the summary judgment standard requires

7    that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

8    be drawn in his [or her] favor," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970),

9    the Court finds that a genuine issue of material fact exists regarding Plaintiff's regular rate

10   of pay.  Determining Plaintiff's rate of pay, and in turn, whether she was paid for overtime

11   hours, depends on credibility determinations which are for the finder of fact.

12                    **E. Liquidated Damages**

13         Plaintiff also seeks summary judgment on her claim for liquidated damages.  The

14   FLSA provides that an employer who violates the FLSA is liable for unpaid overtime and

15   for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated

16   damages are available to fully compensate employees who often have gone years without

17   being properly compensated. *Nellis v. G.R. Herberger Rev. Trust*, 360 F.Supp.2d 1033, 1045

18   (D. Ariz. 2005).

19         The district court has the discretion to refuse to award liquidated damages if the

20   employer shows that: (1) it acted in subjective good faith; and (2) had objectively reasonable

21   grounds for believing that their conduct did not violate the FLSA. *Bratt v. County of Los*

22   *Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). "Good faith is an honest intention to ascertain

23   what the FLSA requires to act in accordance with it." *Chao*, 346 F.2d at 920.  If the employer

24   fails to satisfy this burden, the district court must award liquidated damages. *Local 246*, 83

25   F.3d at 297; *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 357 (9th Cir. 1990).  Liquidated

26   damages are the norm in FLSA cases. *Local 246*, 83 F.3d at 297.

27         Defendants' summary judgment pleadings do not address whether they acted in

28   subjective good faith or had objectively reasonable grounds for not paying Plaintiff overtime

     wages.  Rather, Defendants argue that Plaintiff is not entitled to liquidated damages because

1   she is not entitled to any damages.  (docket # 31 at 11) Whether Plaintiff is entitled to

2   liquidated damages is contingent upon whether Plaintiff is entitled to overtime payments in

3   the first instance.  Because issues of fact exist regarding the issue of liability, Plaintiff's

4   request for summary judgment on the issue of liquidated damages is premature and will not

5   be decided by the Court at this time.

6                      **F. Attorneys' Fees and Costs and Post-Judgment Interest**

7               Plaintiff also seeks summary judgment on her request for attorneys' fees and costs

8   and post-judgment interest.  Because Plaintiff's motion is one for partial summary judgment

9   on only a portion of Count I, it is premature to resolve the issue of attorneys' fees and costs

10  at this juncture.  Moreover, because issues of fact exist regarding the issue of liability,

11  Plaintiff's request for summary judgment on the issue of attorneys' fees and costs and post-

12  judgment interest is premature and will not be decided by the Court at this time.

13  **V. Conclusion**

14              In conclusion, the Court finds that the parties do not dispute that: (1) during the

15  relevant period, Defendants were employers for purposes of the FLSA; (2) during the

16  relevant period, Plaintiff was an employee for purposes of the FLSA; (3) Plaintiff worked

17  536 hours of overtime in 2005.  The Court finds that Plaintiff has established a *prima facie*

18  case that Defendants acted, at least, with reckless disregard for the FLSA's requirements

19  which is sufficient to establish a wilful violation of the FLSA and trigger the three-year

20  limitations period. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Chao*, 346

21  F.3d at 919.  Thus, Plaintiff may seek damages dating back three years from the date she

22  filed this action, but this issue is reserved for the finder of fact.  The Court further concludes

23  that, construing the record in light most favorable to the nonmoving party, Plaintiff is not

24  entitled to summary judgment because material issues of fact exist regarding her regular rate

25  of pay and whether she worked overtime hours for which she was not paid.  Fed.R.Civ.P.

26  56(c); *Anderso*n, 477 U.S. at 255.  Similarly, the Court will deny Defendants' Cross-Motion

27  for Summary Judgment in view of the material issues of fact regarding Plaintiff's regular rate

28  of pay and whether she was adequately compensated for overtime hours worked.  (docket #

31)

1    In their cross-motion for summary judgment, Defendants argue that Plaintiff, or

2  her counsel, "did not do a proper investigation before suing" and, therefore, Rule 11 sanctions

3  are appropriate.  (docket # 31at 2, 13)  Defendants assert that Plaintiff "filed this matter

4  without investigation, without evidence, without regard to the fact that she was paid every

5  penny she was due, and only because she wanted to 'stick up for herself.'" (docket # 31 at

6  13) Defendants' claims for Rule 11 sanctions are based on conclusory statements regarding

7  counsel's failure to investigate prior to bringing suit.  The record undermines these

8  allegations and reveals that Plaintiff's Complaint raises material issues of fact for jury

9  determination.  There is no basis for Rule 11 sanctions on the record before the Court.

10    Accordingly,

11    **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (docket

12  # 25) is **DENIED**.

13    **IT IS FURTHER ORDERED** that Defendants' Cross-Motion for Summary

14  Judgment (docket # 31) is **DENIED**.

15    DATED this 22nd day of January, 2008.

16

17

18                    Lawrence O. Anderson
                      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28